(Hamilton County Probate Court.)

In re exceptions to the account of M. J. HOUGH, guardian of THOMAS H., SA-
    RAH E., VIRGINIA P.. AMANDA S. and EMMA P. FRY, Minors.

Compensation of guardians—The right to draw upon the principal of the ward's es-
    tate, if the income proves inadequate for the needs of the ward.

(Decided January, 1893.)

FERRIS, J.

This matter comes before the court on exceptions filed to the account
of Mrs. M. J. Hough, as guardian. Very many matters were presented by
the testimony and arguments of counsel, which the court does not deem it
necessary in the decision of this question to consider. Admitted facts
show that on the twenty-third day of January, A. D. 1871, Mrs. M. J.
Hough was appointed guardian of Thomas H., Sarah E., Virginia P.,
Amanda S. and Emma P. Fry, and that immediately thereafter she pro-
ceeded to act under her powers as guardian of said wards.

The amount that she received may be in dispute. The guardian her-
self has admitted receiving $2,741.55, and, if permitted to charge for the
expenses which she claims to have been necessary for the maintenance,
support, and education of the children, it would be, by common consent,
admitted that no balance would be remaining in her hands, belonging to
any of the wards, and it would not be necessary for the court to consider
whether she had received a few hundred dollars more, or a few hundred
dollars less. Certain it is, that the expenses incident to the duties she
undertook to perform in caring for the wards, would more than exhaust
a much larger sum. According to the guardian's figures, more than
$9,000 has been overpaid. It is contended that Mrs. Hough, being an
aunt and blood relative of the children, received them into her family,
not intending to charge for the expense necessary to educate, clothe and
care for them, and stood therefore, in the position of a parent; and con-
tention is therefore had that by her own admission she is bound to account
to the wards for the amount of money which she received from their
father's estate, making no deductions for the expenses which her account
shows were necessary for the Fry children.

And it is also contended that the services rendered by the children
were valuable, and should be deducted from the amount which might have
been expended on their behalf. Such theory is inconsistent with itself.
If Mrs. Hough were in the position of a parent, she would not be entitled
to receive pay and remuneration for the amount expended upon the Fry
children as her wards; nor would they, in turn, be entitled to receive
pay for their services; for the parent may not charge his child for neces-
saries, nor may the child recover from the parent for work and labor per-
formed.

I do not discuss here the class of cases where the estate of the parent
is insufficient to bear such expense, while the estate of the child is ample
and sufficient for that purpose; but, granting what the testimony shows
to be the fact, that Mrs. Hough was the statutory guardian of the Fry
children, took them into her home and cared for them during their mi-
nority, and received, during the period for which she was acting as their
guardian, a sum of money sufficient to pay the whole or a portion of the
expenses incurred by their care, would she, in law, be entitled to receive
this fund and appropriate it or apply it to the extent pro tanto for the
purpose of liquidating any charge she might have made against them for
necessaries, as shown by the testimony? Or, does the fact that she was

moved by considerations of love and affection to care for the children of a deceased sister, make it impossible for her to recover from the estate which came into her hands as their guardian? Would any statement made by her, touching the motives which induced her to take upon herself the responsibility of rearing and caring for these children, affect the legal question of her right to recover from their estate?

Granting that Mrs. Hough received the children into her own home, not knowing that they were possessed of any estate, but subsequently received that which was theirs, for them in a trust relation, would she in law be entitled to apply and appropriate the fund toward the payment of the expense made necessary by her position as their guardian? Does such a relation necessitate expense without possibility of reimbursement?

A careful study of the duties made necessary by the statutes and the translations given by the courts to these statutes, relieve the question of many apparent difficulties. The position of the guardian carries with it many duties similar to those of parents, particularly when the parents are both dead. Some one must exercise the right to custody when the natural protectors are gone, and chancery jurisdiction must determine many of the rules that operate in determining questions of the right to custody, the right of controlling and right to the use of the ward's estate.

But the rule of law is well settled, that while a father is bound to educate and maintain his children from his own means, no such pecuniary responsibility is imposed upon any guardian who is not a parent. The guardian need only use for that purpose the wards' fortunes; and, in supplying the wants of the wards, the guardian is to consider not the style of life to which his wards have been accustomed, so much as the income of the estate at his disposal. Whatever their social rank may have been, he may, provided they are left destitute, place them at work, and, in general, care for them as good judgment and conscience may dictate, and the courts have shown a liberal disposition to protect the guardian always from personal liability on account of his wards.

If the income of the wards' estate be ample for the payment of necessaries supplied them, their estate must answer for the payment and discharge of the same.

Schouler's Domestic Relations, section 337, page 470. And if the guardian shall pay from his own funds for those things which he would be in law entitled to pay if he were in funds as guardian, he would, in the event of receiving an estate belonging to his wards, be entitled, on all principles of equity, to reimbursement for necessaries thus supplied by himself. Thus it has been held that he is entitled to reimbursement for all advances of money for the wards' maintenance and education. Smith's appeal, 30 Pa. St., page 397; Rollins v. Marsh, 128 Mass., page 116.

The right to judge what are necessaries and what is proper for the wards to receive, is a discretion vested properly by our courts with the guardian, and with which courts of probate are slow to interfere; and, while the courts have held that the safer rule in such matters is to have obtained from this court an order to pay from the principal, having extinguished the income, yet where the guardian in the course of his duties has found it necessary to use the principal, the courts have held that when such expenditure was had in good faith and for necessary purposes, even the payment of the principal, extinguishing entirely the same, has been justified, when applied to the payment of debts made necessary by the care, education and maintenance of the wards.

Especially is it the duty of the guardian to so manage the trust, as that the fund coming into his hands shall be applied to those things which

are for the highest and best interest of the wards, and no higher standard can be raised than that of a parent who discharges such duties from motives of affection.

There is no law higher than the natural law applicable to such cases, and so it is that where it appears that the guardian has wisely used the principal and extinguished the entire estate in properly bringing up the wards, the courts have commended and confirmed such an administration as being in the line of the plain duty of the statutory guardian.

The general doctrine, as far as the court has been able to glean it from the reading of many authorities, provides, upon a well known principle in equity, that a guardian should be entitled to receive a full return for whatever he may have expended on behalf of the ward. If he has expended it, he may reimburse himself from funds subsequently acquired.

Now, applying this principle to the case at bar, the court is not satisfied that there has been made out by the testimony, a state of facts that would justify a judgment finding that Mrs. Hough had agreed to take these wards and furnish all the necessaries gratuitously, and in the absence of such an agreement, the rules of law would justify a reasonable compensation and return for moneys expended in their behalf. And even though the court were inclined to allow a balance due to the guardian, that makes it unnecessary to determine whether the charges, if considered, would be allowed. Upon any theory, Mrs. Hough would have been entitled to receive, if entitled to receive at all, a much larger sum than is shown by the testimony ever came into her hands.

An examination of the cases cited by Redfield in his work on Law and Practice of Surrogate Courts, page 804, citing a number of cases from New York, (34 Hun, page 267; 36 Hun, page 301; 48 Hun, page 247; 17 N. Y. State Reports,) lays down the general doctrine that a guardian may be allowed for necessaries furnished the infant, even before his appointment as guardian, and the surrogate (corresponding to our probate judge) upon application, would direct the payment out of the infant's property, for all sums that might have been used for the support and education of the infant, in such amounts as he might deem proper, applying first the income, and, when that was exhausted, if inadequate for the purpose, the entire principal; and, referring to a case in 17 N. Y. St., page 900, where the principle was laid down, that where parties became interested in the welfare of children in perfect good faith, and, with an honest and earnest purpose of promoting the welfare, comfort and best interests of the wards and their estate, employed an aunt of the children as house-keeper keeping the family together, spending certain money of the estate for support, maintenance and education of the family, such expenditures being of a nature that would have been authorized by the court had application been made in advance of paying out the money, the court allowed and confirmed the action of the guardian.

Running through a large line of cases, including the North Carolina and South Carolina cases referred to by counsel, there can be no doubt but what the courts are inclined to deal with the equities involved in each separate transaction, and in matters of accounting, the court should be governed by questions of right and justice and fair dealing.

If the amount shown to have been expended were not so much in excess of the amount received, the court in this case might be inclined to weigh carefully the testimony of the services rendered, to the end that such services might be properly compensated. This, however, would be futile and needless, in view of the excess of funds which the testimony shows were necessary to supply the wants of these minors, during minority. Whatever funds were received by the guardian from any of the

wards, after such ward became of age, is not matter that can enter into this controversy. This court has no jurisdiction, and the remedy, if any, must be found in another. These exceptions will therefore be overruled.

C. H. Blackburn and Wm. E. Jones, for the exceptions.

Samuel W. Smith, Jr., for Mrs. Hough.